**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KELLY MARIE YEAGER,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner, Social Security Administration,<br><br>Defendant. | ) | C.A. No. 25-1214-JLH-LDH |

FILED
AUG 24 2026
U.S. DISTRICT COURT DISTRICT OF DELAWARE

**REPORT & RECOMMENDATION**

Plaintiff Kelly Marie Yeager ("Plaintiff") appeals from an unfavorable decision by the Commissioner of the Social Security administration ("Commissioner") denying her application for disability insurance benefits ("DIB"). Consistent with the Court ordered briefing schedule (D.I. 11), the parties filed cross motions for summary judgment. (D.I. 12, 13, 17, 18, 19). For the following reasons, I recommend that Plaintiff's motion for summary judgment (D.I. 12) be GRANTED, that Defendant's cross-motion for summary judgment (D.I. 17) be DENIED, and that this case REMANDED for further proceedings.

## I. LEGAL STANDARD

Courts have plenary review over the Commissioner's legal conclusions but review the Commissioner's factual findings for "substantial evidence." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Benyhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And whatever the meaning of 'substantial' in other contexts, the threshold for such

evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek*, 587 U.S. at 103. In reviewing whether substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler*, 667 F.3d at 359; *see also Zirnsak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014). In other words, reviewing courts must affirm the Commissioner if substantial evidence supports the Commissioner's decision, even if they would have decided the case differently.

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). The Third Circuit has previously explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations. In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity. If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. The claimant bears the burden of demonstrating an inability return to his past relevant work. If the claimant does not meet the burden the claim is denied.
>
> If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual

> functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545–46 (3d Cir. 2003) (internal citations omitted). The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

## II. BACKGROUND

On May 23, 2021, Plaintiff filed for DIB due to bipolar disorder, manic depression, post-traumatic stress disorder ("PTSD"), and vision issues, during the relevant period between her alleged onset date, April 25, 2017, and her date last insured ("DLI"), June 30, 2020. (D.I. 7 (hereinafter, "Tr.") at 10–13). Plaintiff's claim was denied twice: initially on April 6, 2022, and upon reconsideration on November 2, 2023. (*Id.* at 112, 118). Following these denials, Plaintiff requested a hearing before an administrative law judge ("ALJ"), who ultimately denied Plaintiff's request for benefits. (*Id.* at 10–19). Plaintiff subsequently initiated this action seeking judicial review of the ALJ's decision. (D.I. 2).

## III. DISCUSSION

Plaintiff contends that the ALJ failed to properly consider and weigh contradictory evidence, and that this failure was error. (D.I. 13 at 8). I agree.

Citing extensively to the transcript, Plaintiff argues that her mental health issues are as follows:

> Plaintiff's medical records reveal that she is diagnosed with schizoaffective disorder – bipolar type, depression, and ADHD. T 378, 534. Her impairments are characterized by mood fluctuations, episodes of depression and anxiety, passive suicidal thoughts, restlessness, impulsivity, racing thoughts, limited coping skills, and limited insight. T 378, 534. Treatment notes from 2018 show that Plaintiff was receiving in-home mental health services, during which she exhibited "fair" grooming and was found lying on her

couch in the dark. Tr. 375, 381. Plaintiff was often noted to be anxious (T 382, 384, 386, 396), depressed (T 375, 383, 385, 390), agitated (T 383), tearful (T 385, 386), and stressed (T 377, 387). She displayed a restricted affect (T 373, 375, 382, 384, 390, 393, 396) and had poor or variable sleep/appetite (T 377, 385, 387). Even when Plaintiff outwardly denied feelings of depression, she was found to have an abnormal affect and was notably isolated in her home. T 373.

Similarly, in 2019, Plaintiff would report that she was doing good, yet present with an agitated mood and restricted affect. T 406. She continued to be observed as anxious (T 296, 408, 444), agitated (T 406), manic (T 470), depressed (T 398), "flat" (T 462), or stressed (T 403). Plaintiff's sleep and/or appetite were frequently noted to be poor/variable (T 403, 429, 437, 458, 464, 468, 471, 510), as were the quality of her activities of daily living at times (T 398, 462). Plaintiff's hygiene and grooming were only "fair" on occasion (T 420, 425), and her affect remained abnormal (T 396, 398, 406, 408, 444). Despite sometimes denying symptoms, Plaintiff admitted to anxiety, depression, poor sleep, and discomfort going into public places. T 416, 432, 435. Her treatment team continued to meet with her weekly for medication management and assistance with daily/basic needs (T 398, 477, 481), as well as to work on the development of techniques for Plaintiff to cope with stress and manage her emotions. T 451, 527. Plaintiff was encouraged to attend an intensive outpatient program ("IOP"), but she was reluctant. T 441.

In 2020, during the months preceding her date last insured, Plaintiff regressed and her medications were adjusted/changed. T 539, 560. She was reluctant to keep taking medication because she felt "like a junkie" and did not like "the way they ma[d]e her feel." T 536. She complained that treatment was not helping her and occasionally asserted that she did need anyone's help. T 538, 568, 570. When additional treatment modalities were recommended, Plaintiff declined them due to anxiety. T 547. She only wanted to meet with one specific provider and did not want to see anyone else. T 542. Plaintiff's appetite and sleep were poor (T 538, 543), her mood was depressed (T 539, 560), and her activities of daily living were only "fair." T 526, 556. On various dates, Plaintiff reported that she was fine, but she was instead found to be sad, guarded, "flat," withdrawn, nonverbal, difficult to engage, making poor eye contact, tearful, and/or crying uncontrollably. T 536, 543, 545, 556, 563, 565, 568, 570.

> During the administrative hearing, Plaintiff testified that she stopped working in 2017 and had not worked since. T 50. She admitted that she gets "agitated" and "angry," and that she "can go off like a drop of a hat." T 56-57. By "go off" she means that she will "freak out" and "flip out," by yelling at "everybody and anything." T 57. She confirmed that she does this "for no reason" and that it has cost her friendships. T 57. She has gotten better with medication, so it does not happen "as often" anymore. T 57. She continues to lack motivation and struggle to concentrate, and she also still has frequent episodes of crying. T 57-58. When asked to elaborate on the limited social interactions she maintains, Plaintiff started crying. T 58.

(D.I. 13 at 2–4).

There is little to no discussion of this evidence by the ALJ in the record. There is no explanation from the ALJ as to why it was either not considered or rejected. Without any explanation, I cannot determine why or how weight was afforded to some evidence but not others, like the repeated medical records or claimant's own attestations. To the extent the ALJ considered this evidence, the sum total of her analysis of it is evidenced in statements like this: "In looking at all of the psychiatric evidence of record, the undersigned notes that the symptoms and limitations alleged by the claimant are not fully supported by the objective findings." (Tr. at 8). An ALJ is required to consider all relevant evidence in the record in determining whether a claimant is disabled. *Zirnsak*, 777 F.3d at 614 (citing *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). The Court "need[s] from the ALJ not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). The ALJ did not do what the law requires. Accordingly, I cannot determine that the ALJ's

finding is supported by substantial evidence when the ALJ's decision does not actually weigh the evidence in any meaningful way.

In support of their argument that the ALJ properly discussed her weight of evidence in the record, Defendant cites *Green v. Shalala*, and assert that the ALJ need not "evaluate every piece of evidence," and the analysis of the evidence must only be articulated "at some minimum level." 51 F.3d 96, 101 (7 Cir. 1995); (D.I. 18 at 7). It is true that the ALJ need not discuss or refer to every piece of evidence in the record, but, as Plaintiff points out the ALJ "'must consider all the evidence and give some reason for discounting the evidence [she] rejects.'" *Tomlinson v. Saul*, No. CV 18-859 (MN), 2019 WL 4671191, at *9 (D. Del. Sept. 25, 2019) (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); (D.I. 13 at 8). The mere fact that the ALJ mentioned that she has considered all of the evidence is not enough. She must provide further discussion or consideration of the potential weight as required under the law—however insignificant she may eventually find that weight to be.

Accordingly, I cannot determine that the ALJ's determination was based on substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, I recommend that Plaintiff's motion for summary judgment be GRANTED, and the case REMANDED for further administrative proceedings in accordance with the findings contained herein. Accordingly, I recommend that Defendant's cross-motion for summary judgment be DENIED.

Because I have recommended that the case be remanded to the ALJ so that she can make a sufficient record with respect to, *inter alia*, her residual function capacity determination, *see supra*, Plaintiff's additional claims of error may be remedied through the case's treatment on remand. "A

remand may produce different results on these claims, making discussion of them moot." *Brown v. Saul*, No. 18-1619-MEM-GBC, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020); *accord Marilyn G.D. v. Comm'r of Soc. Sec.*, No. 21-494-KM, 2022 WL 855684, at *8 (D.N.J. Mar. 22, 2022); *LaSalle v. Comm'r of Soc. Sec.*, No. 10-1096-DWA, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011); *Bruce v. Berryhill*, 294 F. Supp. 3d 346, 364 (E.D. Pa. 2018). Accordingly, I decline to address them further.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: August 24, 2026

Laura D. Hatcher
United States Magistrate Judge